# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOANNA ISIAH,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,[1]<br><br>        Defendant.<br><br>_____/ | Case No. 1:18–cv–01726–SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1.) |

## I.     INTRODUCTION

On December 21, 2018, Plaintiff Joanna Isiah ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of -a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on September 12, 2019). He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

## II.     BACKGROUND

On May 14, 2015, Plaintiff protectively filed an application for SSI. (Administrative Record ("AR") 163–73.) Plaintiff alleges that she became disabled on September 8, 2014, due to right shoulder surgery, scoliosis, migraines, neurological problems, hearing and vision loss, and anxiety. (AR 15, 20, 58, 71, 76, 92, 174, 179, 183, 233, 255, 497, 554, 575.) Plaintiff was born on October 18, 1980 and was 33 years old on her alleged onset date. (AR 58, 71, 81, 84, 164, 179, 233.) She has a high school education and can communicate in English. (AR 36, 182, 184, 235, 257.)

### A.     Relevant Medical Evidence[3]

#### 1.     Consultative Psychologist Roger A. Izzi, Ph.D.

On September 28, 2015, Roger A. Izzi, Ph.D., performed a psychiatric evaluation of Plaintiff. (AR 411–14.) Plaintiff complained of anxiety, feelings of worthlessness, and "constant pain." (AR 411.) She reported that she was not consulting any mental health professionals at the time of the examination. (AR 412.)

Dr. Izzi observed Plaintiff was alert, responsive, and fully oriented. (AR 412.) She described her mood as "sad," her affect was "dysphoric," and she was observed to cry. (AR 412.) When questioned regarding the onset of her emotional difficulties, Plaintiff responded that "[s]ix years ago, the anxiety started and came out of nowhere." (AR 412.) She continued: "I feel like I'm going to pass out or die. When I lost my job, I had a panic attack." (AR 412.)

On examination, Plaintiff was able to immediately recall three words without any obvious difficulty. (AR 413.) Upon delayed recall, she was able to recall two of the three words. (AR 413.) Dr. Izzi observed Plaintiff had no trouble spelling the word "world" forward and backward. (AR 413.)

Dr. Izzi diagnosed Plaintiff with an unspecified anxiety disorder. (AR 413.) He noted that Plaintiff's mood disorder will fluctuate as her subjective perception of pain fluctuates, and that there is likely to be some depression secondary to her awareness of loss of functional ability. (AR

---

[3] Plaintiff's assertions of error are limited to the ALJ's finding that Plaintiff's mental impairments associated with her were not severe and the ALJ's consideration of Plaintiff's subjective complaints. Only evidence relevant to those arguments is set forth below.

413.)  Dr. Izzi noted that Plaintiff is "not having any difficulty caring for basic hygiene" and that she "does appear capable of performing a simple repetitive type task on a consistent basis over an eight-hour period."  (AR 413.)  Dr. Izzi opined that Plaintiff's ability to get along with peers or be supervised in a work-like setting would be moderately limited by her mood disorder, which will fluctuate.  (AR 413.)  He further opined that "[a]ny significant fluctuation of mood may limit [Plaintiff's] ability to perform a complex task on a consistent basis over an eight-hour period."  (AR 413.)  According to Dr. Izzi, Plaintiff appeared capable of responding to usual work sessions situations regarding attendance and safety issues and dealing with changes in a routine work setting. (AR 414.)  She was also capable of managing her own finances.  (AR 414.)

### 2.  State Agency Physicians

On November 16, 2015, state agency physician Paul Klein, PsyD., reviewed the record and assessed Plaintiff's mental residual functional capacity (RFC).[4]  (AR 63–64.)  Dr. Klein opined that Plaintiff had no restrictions of activities of daily living, no difficulties in maintaining social functioning, and was only mildly limited in her ability to maintain concentration, persistence, or pace.  (AR 63.)  He concluded that Plaintiff's anxiety disorder was therefore nonsevere.  (AR 63.) Upon reconsideration on March 17, 2016, another state agency physician, Judy K. Martin, M.D., reviewed the record and affirmed Dr. Klein's findings.  (AR 77–78.)

### B.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on December 14, 2015, and again on reconsideration on March 25, 2016.  (AR 85–88, 92–96.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 97–112.)

On February 8, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 35–52.)  Plaintiff testified that she is still having issues with

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

anxiety and that she sees a therapist and a psychiatrist.  (AR 47.)  She testified that therapy helps with her anxiety because "it helps to talk about what's going on" in her life.  (AR 47.)  She tried several medications but had "really bad reactions," so she ceased taking them.  (AR 47.)  She testified she has difficulty paying attention and difficulty getting along with her family at times.  (AR 47–48.)

A Vocational Expert ("VE") indicated that Plaintiff had past relevant work as a receptionist, Dictionary of Operational Titles ("DOT") code 237-367.038, which was sedentary exertional work, with a specific vocational preparation (SVP)[5] of 4.  (AR 53.)  The ALJ asked the VE a hypothetical question, in which the VE was to consider a person of Plaintiff's age, education, and work experience, who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six to eight hours in an eight-hour workday; occasionally climb ladders, ropes, or scaffolds; and frequently stoop, crouch, crawl, climb, kneel, and balance.  (AR 53.)  The VE testified that such a person could perform Plaintiff's past relevant work.  (AR 53.)  The ALJ asked a follow up question regarding a second hypothetical worker who could lift 10 pounds; stand or walk two hours in an eight-hour workday; sit six to eight hours in an eight-hour workday; cannot climb ladders, ropes, scaffolds or work at heights; and occasionally stoop, crouch, crawl, climb, kneel, and balance..  (AR 54.)  The VE testified that such a person could perform Plaintiff's past work.  (AR 53.)  The ALJ then posed to the VE third and fourth hypothetical persons who had the same limitations as the second but with the additional requirements of two to four breaks of 30 minutes per day or missing at least four days of work per month.  (AR 53.)  The VE testified that there was no work that either hypothetical person could perform.  (AR 53.)

## C.    The ALJ's Decision

In a decision dated April 25, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 15–24.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 17–24.)  The ALJ decided that Plaintiff had not engaged in substantial gainful

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

activity since May 14, 2015, the application date (step one). (AR 17.) At step two, the ALJ found Plaintiff's following impairments to be severe: status post right shoulder arthroscopy; obesity; Chiari 1 malformation status post craniotomy and decompression; and lumbar degenerative disc disease. (AR 17.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 17–19.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform sedentary work as defined in 20 CFR [§] 416.967(a) except [Plaintiff] can stand/walk 2 hours and sit for eight hours. [Plaintiff] can never climb ladders, ropes and scaffolds or work at heights. [Plaintiff] can occasionally stoop, crouch, crawl, climb, kneel and balance.

(AR 19.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) The ALJ found that, on the basis of the RFC assessment, Plaintiff retained the capacity to perform her past relevant work as a receptionist (step four). (AR 23.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 24, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.  LEGAL STANDARD

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of

6

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.  Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"

*Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in two respects: (1) the ALJ erred at step two by improperly discrediting the opinion of consultative examiner Dr. Izzi that Plaintiff's mental impairment was severe; and (2) the ALJ failed to articulate specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her subjective complaints. (*See* Doc. 15 at 14–18; Doc. 19 at 2–6.) Defendant counters that the ALJ properly discounted Dr. Izzi's opinion and that the ALJ's credibility assessment of Plaintiff was appropriate. (*See* Doc. 18 at 11–17.)

**A.     The ALJ Committed Error at Step Two by Improperly Discrediting the Opinion of the Consultative Examiner**

**1.     Legal Standard**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities." *Id.* at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," (2) "[c]apacities for seeing, hearing, and speaking," (3) "[u]nderstanding, carrying out, and remembering simple instructions," (4) "[u]se of judgment," (5) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (6)

"[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *Cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (*citing Yuckert*, 482 U.S. at 153–54). Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the impairment." *Cookson v. Comm'r of Soc. Sec.*, No. 2:12–cv–2542–CMK, 2014 WL 4795176, at *2 (E.D. Cal. Sept. 25, 2014); *see, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

**2.     Analysis**

Here, Plaintiff contends that the ALJ erred at step two by improperly rejecting the opinion of consultative psychologist Dr. Izzi as to the severity of Plaintiff's mental impairment of anxiety

disorder.  (*See* Doc. 15 at 14–16; Doc. 19 at 2–6.)  The Court agrees.

The weight given to medical source opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830–31.  The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Dr. Izzi diagnosed Plaintiff with an unspecified anxiety disorder.  (AR 413.)  His clinical findings included that Plaintiff's mood disorder will fluctuate as her subjective perception of pain fluctuates, and that there is likely to be some depression secondary to her awareness of loss of functional ability.  (AR 413.)  On examination, Plaintiff was able to immediately recall three words without any obvious difficulty.  (AR 413.)  Upon delayed recall, she was able to recall two of the three words.  (AR 413.)  Dr. Izzi observed Plaintiff had no trouble spelling the word "world" forward and backward.  (AR 413.)  He opined that Plaintiff's ability to get along with peers or be supervised in a work-like setting would be moderately limited by her mood disorder, which will fluctuate.  (AR 413.)  He further opined that "[a]ny significant fluctuation of mood may limit [Plaintiff's] ability to perform a complex task on a consistent basis over an eight-hour period."  (AR 413.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Izzi's opinion is contradicted by the medical opinion evidence of state agency non-examining physicians Drs.

Klein and Martin, who, although unmentioned in the ALJ's decision, opined that Plaintiff had no restrictions of activities of daily living, no difficulties in maintaining social functioning, and was only mildly limited in her ability to maintain concentration, persistence, or pace. (AR 63–64, 77–78.) Drs. Klein and Martin concluded that Plaintiff's anxiety disorder was nonsevere. (AR 63–64, 77–78.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Izzi's opinion.

In according Dr. Izzi's opinion "little weight" at step two, the ALJ stated Plaintiff:

> had generally unremarkable memory and concentration during her mental status examination. Moreover, there was no obvious language or cognitive deficits detected. [Plaintiff] was not under any psychiatric treatment by any mental health professional, which indicates that her anxiety is not as severe as alleged.

(AR 19) (citations omitted).) While an ALJ may properly discount an examining physician's opinion that is inconsistent with the medical record, including his own findings, *see Valentine*, 574 F.3d at 692–93, it is not entirely clear that the ALJ is discrediting Dr. Izzi's opinion *on this basis*. There is nothing overtly inconsistent between Dr. Izzi's finding that Plaintiff had "unremarkable memory and concentration" and his opinion that Plaintiff has "moderate limitation in social interactions" as a result of her anxiety disorder. (*See* AR 19.) Assuming the ALJ did intend to discount Dr. Izzi's opinion on this basis, the decision offers no elucidation from which the Court can find a specific and legitimate rationale to explain any purported inconsistency between the two findings. This lack of adequate explanation suggests that the ALJ instead substituted her own judgment for competent medical opinion and/or made her own independent medical findings, both of which are improper. *See Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, . . . and he must not succumb to the temptation to play doctor and make his own independent medical findings.").

It *is* clear, however, that the ALJ intended to discount Dr. Izzi's opinion due to Plaintiff's lack of psychiatric treatment at the time of the examination. (*See* AR 19 ("[Plaintiff] was not under any psychiatric treatment by any mental health professional, which indicates [that her anxiety is not

11

as severe as alleged.").  While the ALJ is correct that Plaintiff was not consulting any mental health professionals at the time of the examination in 2015 (*see* AR 412, 413), her testimony, as well as other evidence in the record, establishes that she later sought mental health treatment and was prescribed medication to treat her anxiety.  (*See* AR 47 (testifying in 2018 that she sees a therapist and a psychiatrist for anxiety and tried several medications but had "really bad reactions" to them); 576–93 (2017 mental health treatment notes from Gagandeep Randhawa, M.D., and Sandy Badger-Jones, LCSW).)  That Plaintiff underwent therapy and was prescribed medications to treat her anxiety two years after her examination by Dr. Izzi suggests, at a minimum, that her anxiety symptoms persisted, yet the ALJ's decision makes no mention of this fact.  Moreover, Plaintiff's failure at the time of his examination by Dr. Izzi to seek treatment, and therefore medication, for her anxiety, is not a legitimate reason to reject Dr. Izzi's opinion.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[T]he fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of [a] claimant's condition is inaccurate."); *see also Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) (noting that the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'") (quoting *Nguyen*, 100 F.3d at 1465).

In sum, the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for giving "little weight" to the opinion of Plaintiff's examining physician, Dr. Izzi, and therefore "lacked substantial evidence to find that the medical evidence clearly established [Plaintiff's] lack of" the medically severe mental impairments of affective and anxiety disorders. *Webb*, 433 F.3d at 688.  Accordingly, the ALJ's step two finding cannot stand.[6]

---

[6] Defendant now attempts to justify the ALJ's analysis by offering post-hoc rationale to support it, namely that Dr. Izzi's opinion was rejected because it was inconsistent with "other examinations" in the record.  (*See* Doc. 18 at 11–12.)  A reviewing court, however, cannot affirm the denial of benefits based on a reason not stated or finding not made by the ALJ, and Defendant's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is unavailing. *See, e.g., Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001) (an agency decision cannot be affirmed based on a ground that the agency did not invoke in making its decision); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based

**B.      The ALJ's Error at Step Two Was Not Harmless**

Because Plaintiff was found to have at least one severe impairment (*see* AR 17–19), this case was not resolved at step two.  Plaintiff does not assign error to the ALJ's finding at step three.  Thus, any error in the ALJ's finding at step two is harmless, if all impairments, severe and non-severe, were considered in the determination Plaintiff's RFC.  *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity).  The record demonstrates this was not done.

In determining Plaintiff's RFC, the ALJ did not include or discuss any functional limitations related to Plaintiff's anxiety disorder, including those assessed by Dr. Izzi, in determining Plaintiff's RFC.  (*See* AR 19–23.)  For example, Dr. Izzi determined Plaintiff's ability to get along with peers, be supervised in a work-like setting, and perform a complex task on a consistent basis would be moderately limited by her fluctuating mood disorder.  (AR 413.)  However, the ALJ did not discuss, and the RFC does not include, any limitations in those areas.  (*See* AR 19.)  As the ALJ failed to discuss the significant, probative evidence favorable to Plaintiff contained in the medical opinions regarding Plaintiff's anxiety disorder, the RFC was incomplete and the ALJ's error was not harmless.  *See, e.g., Inskeep v. Colvin*, No. 3:15-cv-00759-BR, 2016 WL 3509395, at *4 (D. Or. June 27, 2016) (concluding that the ALJ erred at step two when he found Plaintiff's mental impairments are nonsevere and finding that error is not harmless because the ALJ did not include any mental limitations in his assessment of Plaintiff's RFC.)  Remand is therefore warranted.

**C.      Remand for Further Proceedings is Appropriate**

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." *McAllister*

---

on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). *Cf. Barbato v. Comm'r of Soc. Sec. Admin*., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (remand is appropriate when a decision does not adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council") (citation omitted).

*v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  Where further administrative review could remedy the ALJ's error, remand for further administrative proceedings, rather than an award of benefits, is warranted. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). *See also Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) ("If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Brown-Hunter*, 806 F.3d at 495 (citations omitted).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate.[7]  *See, e.g., Simmons v. Colvin*, No. CV 12–06060–AJW, 2013 WL 3337666, at *3-4 (C.D. Cal. July 1, 2013) (finding error at step two and remanding for further administrative proceedings).  On remand, the ALJ shall reconsider the opinion of Dr. Izzi regarding Plaintiff's mental impairments, and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

In light of the remand required by the ALJ's error at step two, the Court finds it unnecessary to address Plaintiff's arguments with respect to the ALJ's failure to credit the testimony of Plaintiff,

---

[7] Plaintiff concedes the error identified above can be remedied with further proceedings.  (*See* Doc. 15 at 17; Doc. 19 at 6.)

as it concerns her alleged mental impairments that will be reconsidered on remand. *See, e.g., Cable v. Astrue*, No. CIV S 06-0515 DAD, 2007 WL 2827798, at *6–7 (E.D. Cal. Sept. 27, 2007); *Sanchez v. Apfel*, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000) (having concluded that remand is appropriate because the ALJ erred at step two, the court need not consider issues of credibility).

## V.  CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Joanna Isiah and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  __**March 2, 2020**__                    _____/s/ *Sheila K. Oberto*_____
                                                                UNITED STATES MAGISTRATE JUDGE

15